**IT IS ORDERED as set forth below:**

Date: August 2, 2021

_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| IN THE MATTER OF: | : | CASE NUMBERS |
|---|---|---|
| JAMES LEWIS LOVELACE, III, | : | 19-59346-LRC |
| _____ | : | |
| JAMES LEWIS LOVELACE, III, | : | ADVERSARY PROCEEDING |
|  | : | NO. 19-05340-LRC |
| Plaintiff. | : | |
| v. | : | |
| CSB LOGISTICS, LLC, | : | |
| I BUY EVERYTHING, LLC, | : | |
| GERALD R. COLLINS, | : | IN PROCEEDINGS UNDER |
|  | : | CHAPTER 13 OF THE |
| Defendants. | : | BANKRUPTCY CODE |
|  | : | |

# ORDER

Before the Court are the Motion to Dismiss or In the Alternative for Summary Judgment (Doc. 37, "Defendant's Motion"), filed by I Buy Everything, LLC

("Defendant") and the Motion for Partial Summary Judgment (Doc. 35, "Plaintiff's Motion"), filed by James Lewis Lovelace, III ("Plaintiff").

Plaintiff set out to purchase real property known as 547 Chappell Road, Atlanta, Fulton County, Georgia (the "Property") under a land sales contract (the "Contract") between Stonecrest Investments, LLC ("Stonecrest") and his stepfather, Cleve Sampson ("Sampson"). Although only Sampson signed the Contract, Plaintiff and Sampson agreed orally that Plaintiff would pay all costs of the transaction and the Property would belong to Plaintiff. Sometime after the Contract went into default, Stonecrest sold the Property to Defendant, and Defendant encumbered the Property in favor of Gerald Collins ("Collins"). To avoid eviction, Plaintiff filed a Chapter 13 bankruptcy petition, seeking to treat the Property as his own with a secured claim against it, which Plaintiff proposes to pay in full through his Chapter 13 plan. Defendant opposes this relief and argues that it purchased the Property for value and without knowledge of Plaintiff's claim of an equitable interest in the Property and, therefore, took the Property free and clear of any such interest.

To achieve confirmation of his Chapter 13 plan, Plaintiff filed a complaint (the "Complaint") against Defendant and others, seeking, among other relief, a declaration

2

that Plaintiff is the equitable owner of the Property, subject to a secured claim. Defendant seeks dismissal of the Complaint for failure to state a claim upon which relief can be granted and for lack of standing and failure to bring suit in the name of the real party in interest because Plaintiff was not a party to the Contract.[1] Alternatively, Defendant asserts that, under the undisputed material facts, Defendant is a *bona fide* purchaser for value that took title to the Property without knowledge of Plaintiff's claim and, therefore, the Court should grant judgment in favor of Defendant. Plaintiff seeks partial summary judgment in his favor as to his request for declaratory relief because Defendant and Collins had inquiry notice as to Plaintiff's claim and did not investigate why Plaintiff was occupying the Property.

Having considered the undisputed facts and the legal arguments of both sides, the Court finds that issues of material fact remain as to whether Plaintiff or Defendant is entitled to judgment regarding the ownership of the Property. Plaintiff's occupancy of the Property triggered a duty to inquire as to Plaintiff's ownership interest, but whether a further investigation would have revealed the basis of Plaintiff's claim depends upon facts

---

[1] As Plaintiff is seeking a determination that he holds an equitable interest in the Property by virtue of his oral agreement with Sampson to pay all costs of the transaction, the fact that Plaintiff is not a party to the Contract does not result in a lack of standing, and the Court finds that Plaintiff is the proper party in interest. Accordingly, to the extent Defendant's Motion seeks dismissal on that basis or for failure to state a claim upon which relief can be granted, it is **DENIED**.

3

that the Court cannot determine on these cross motions for summary judgment. For this reason, the Court must deny both motions for summary judgment.

I.  Facts

After considering Plaintiff's Statement of Undisputed Material Facts ("PSUMF"), Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Defendant's Response to PSUMF"), Defendant's Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried ("DSUMF"), and Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Response to DSUMF"), the Court finds that the following facts are undisputed:

In 2005, Plaintiff entered into a rent-to-own agreement to purchase the Property. PSUMF, ¶ 1; Defendant's Response to PSUMF, ¶ 1. After the Property was sold at a foreclosure sale in 2008, Plaintiff moved out and never got the opportunity to exercise his option to buy the Property. *Id*. A year later, Plaintiff was walking through the neighborhood and noticed a sign on the lawn advertising the Property for sale. Defendant's Response to PSUMF, ¶ 2; DSUMF, ¶ 2. He saw this as another opportunity to purchase the Property. *Id*. Plaintiff had never owned a home before and, because of his credit issues, he was told that to qualify to purchase the home, he would need another

4

borrower. PSUMF, ¶¶ 2, 5; Defendant's Response to PSUMF, ¶¶ 2, 5.

Sampson agreed to help Plaintiff purchase the Property from Stonecrest on or around February 27, 2009. PSUMF, ¶¶ 3-4; Defendant's Response to PSUMF, ¶¶ 3-4. Prior to executing the paperwork, Plaintiff and Sampson verbally agreed that Plaintiff alone would be responsible for all cost associated with the transaction, including the monthly payment. PSUMF, ¶ 5; Defendant's Response to PSUMF, ¶ 5. Plaintiff provided all the funds required in consideration for the Contract. *Id.* It was always the understanding of Plaintiff and Sampson that Sampson was simply agreeing to act as the borrower to facilitate the credit approval, Plaintiff would supply all funds for the purchase, Plaintiff would be responsible for the debt, and the Property was to be Plaintiff's home. PSUMF, ¶¶ 8, 11; Defendant's Response to PSUMF, ¶¶ 8, 11.

The Contract was signed and executed by Sampson only on February 27, 2009. PSUMF, ¶ 6; Defendant's Response to PSUMF, ¶ 6; DSUMF, ¶ 3; Plaintiff's Response to DSUMF, ¶ 3; *see also* Complaint, Exh. 1. The Contract set out a total purchase price of $27,113.13, $26,002.36 of which was financed through the Contract and provided for immediate possession of the Property. PSUMF, ¶ 7, ¶ 9; Defendant's Response to PSUMF, ¶ 7, ¶ 9.

5

After the final approval to purchase, Plaintiff immediately took possession of the Property and began making repairs to the Property to bring it into habitable condition. Sampson never lived in the Property and never paid any expenses connected with the Property. PSUMF, ¶ 10; Defendant's Response to PSUMF, ¶ 10. Immediately after the transaction, Plaintiff took over making all payments on the Contract and communicating with the servicers—PLM Lender Services, Inc. from April 2009 through December 2010, NLC Servicing Inc. ("NLC") from January 2011 until November 2016. PSUMF, ¶¶ 11, 13-14; Defendant's Response to PSUMF, ¶¶ 11, 13-14. During the time NLC was the servicer, NLC sent several loan statements to Plaintiff's name only. PSUMF, ¶ 14; Defendant's Response to PSUMF, ¶ 14. From November 2016, National Asset Advisors, LLC ("NAA") serviced the loan and sent correspondence addressed to both Sampson and Plaintiff. PSUMF, ¶ 15; Defendant's Response to PSUMF, ¶ 15. Although Plaintiff periodically struggled with payments and fell behind, he continued to send payments to the servicers of the Contract until around July 2018. PSUMF, ¶ 16; Defendant's Response to PSUMF, ¶ 16. The servicing logs from each of the loan servicers shows that Plaintiff made the payments on the loan. The debt under the Contract also appeared on Plaintiff's credit report. PSUMF, ¶ 15; Defendant's Response to PSUMF, ¶ 15.

The Contract stated that upon satisfaction of certain conditions, Stonecrest would convert the Contract to a deed and mortgage, which would be recorded in the deed records. Stonecrest never recorded a deed or a mortgage evidencing the remaining debt obligation, but the parties continued to operate under the original terms of the Contract. PSUMF, ¶ 9; Defendant's Response to PSUMF, ¶ 9.

As of July 27, 2018, Plaintiff received a notice that the servicing of the Contract was being transferred to Wealth Creating Investments ("WCI"). On October 19, 2018, a deed was recorded in the Fulton County Real Estate Records, Deed Book 59368, Page 530, conveying legal title to the Property and the seller's interest in the Contract from Stonecrest to WCI. PSUMF, ¶ 22; Defendant's Response to PSUMF, ¶ 22; DSUMF, ¶ 4; Plaintiff's Response to DSUMF, ¶ 4.[2]

Defendant is a real estate investor who learned about the Property through another independent investor. PSUMF, ¶ 19; Defendant's Response to PSUMF, ¶ 19; *see also* Affidavit of Don Jacobs, ¶ 2 (stating that Defendant is in the business of buying and

---

[2] The date of the transfer of the Property from Stonecrest to WCI is not clear from the parties' statements of undisputed fact. The DSMUF states that Stonecrest conveyed the Property to WCI on October 19, 2018 (¶ 5), and Plaintiff has agreed, but that was after the date—July 2018—that the parties agree Defendant bought the Property from WCI. Attached to Plaintiff's Motion is a copy of a quitclaim deed from Stonecrest to WCI and it is dated July 23, 2018. Accordingly, it appears that Stonecrest transferred the Property to WCI on July 23, 2018, and WCI transferred the Property to Defendant on July 28, 2018.

7

selling houses). On July 28, 2018, WCI conveyed the Property to Defendant. DSUMF, ¶ 6; Plaintiff's Response to DSUMF, ¶ 6. This deed was not immediately recorded because the closing attorney lost the original deed, but an affidavit of lost filing (the "Affidavit") was recorded in Book 59575, Page 578 of the Fulton County Real Estate records. DSUMF, ¶ 7; Plaintiff's Response to DSUMF, ¶ 7; *see also* PSUMF, ¶ 24; Defendant's Response to PSUMF, ¶ 24. Don Jacobs, the managing member of Defendant, drove by the Property to inspect it prior to purchase and spoke with Plaintiff by phone at least once but is unable to recall the details of that conversation. PSUMF, ¶ 21; Defendant's Response to PSUMF, ¶ 21; *see also* Affidavit of Don Jacobs, ¶ 2. Defendant financed the Property through a loan from Collins and executed a deed to secure debt transferring an interest in the Property to Collins. DSUMF, ¶ 8; Plaintiff's Response to DSUMF, ¶ 8.

After several unsuccessful eviction attempts in late 2018, Defendant filed its last dispossessory action against Plaintiff to gain possession of the Property. PSUMF, ¶¶ 23, 26; Defendant's Response to PSUMF, ¶¶ 23, 26. Plaintiff filed an Answer claiming that Defendant had a "fake warranty deed" and submitted a quitclaim deed purporting to show his ownership of the Property. DSUMF, ¶ 10; Plaintiff's Response to DSUMF, ¶ 10. On March 7, 2019, an order was entered by the Magistrate Court granting Defendant

8

possession. PSUMF, ¶ 26; Defendant's Response to PSUMF, ¶ 26. The Magistrate Court's judgment of possession found that Plaintiff had "presented a defective quitclaim deed (only signed by the Tenant, not signed by the Grantor)," and that the "Landlord" had presented a duly recorded warranty deed per O.C.G.A. 44-5-6. DSUMF, ¶ 11; Plaintiff's Response to DSUMF, ¶ 11. Plaintiff, however, timely filed a de novo appeal to the Superior Court of Fulton County, suspending the judgment's effectiveness as a matter of law under O.C.G.A. § 9-12-19, and subsequently filed his Chapter 13 bankruptcy and the Complaint. PSUMF, ¶ 27; Defendant's Response to PSUMF, ¶ 27.

The deed records also reflect a deed from Defendant to CSB Logistics ("CSB"). Counsel for Defendant represented to Plaintiff that Defendant obtained a deed back from CSB and is the proper party in interest. PSUMF, ¶ 29; Defendant's Response to PSUMF, ¶ 29; *see also* Affidavit of Don Jacobs, ¶¶ 13-14 (noting that Defendant transferred the Property to CSB on April 18, 2019, in exchange for a deed to secure debt, and then received a reconveyance of the Property from CSB on November 14, 2020).

II.   Conclusions of Law

Any interest Sampson has in the Property by virtue of the Contract is property of Plaintiff's bankruptcy estate, as the undisputed facts clearly establish that Sampson held

9

his interest in the Contract and any interest in the Property in a purchase money resulting trust for the benefit of Plaintiff at the time Plaintiff filed his bankruptcy petition. Defendant has not put forth any facts that would rebut the presumption of a resulting trust.  *See* O.C.G.A. § 53-12-131(a) ("A purchase money resulting trust is a resulting trust implied for the benefit of the person paying consideration for the transfer to another person of legal title to real or personal property."); *see also In Matter of High-Top Holdings, Inc.*, 564 B.R. 784, 794 (Bankr. N.D. Ga. 2017) (Drake, J.) ("If an alleged beneficiary shows that it has paid consideration for the property, a presumption arises 'in favor of a resulting trust, but such presumption shall be rebuttable by a preponderance of the evidence.'") (quoting O.C.G.A. § 53–12–131(b)); *see also* 11 U.S.C. § 541(a)(1).

Plaintiff's interest in the Property by virtue of his interest in the Contract is an ownership interest in the Property, subject to a claim for payment of the remaining balance under the Contract held by Stonecrest or its successor.  *See In re Dry Creek Farms, LLC*, 2011 WL 9210473, at *4 (Bankr. N.D. Ga. Aug. 30, 2011) (Bonapfel, J.) ("To summarize, Georgia law, provides that the seller under an installment land sale contract, upon default of the purchaser, has the right to collect the balance of the purchase price through levy and sale of the property or to obtain possession of the property through

10

an action for rescission (with the corresponding obligation of restitution), subject to the right of the purchaser to redeem it. In either event, the seller has the same substantive rights as the holder of a deed to secure debt: the right to collect the amount due or subject the property to the payment of that amount."); *see also In re Nix*, 1997 WL 33419263, at *4 (Bankr. S.D. Ga. Aug. 26, 1997); *In re Guyton*, 518 B.R. 681, 693 (Bankr. S.D. Ga. 2014) (explaining that if a contract for deed does not contain a power of sale, "'the equity of the purchaser must be foreclosed by some legal proceeding, unless barred by adverse possession or abandonment'") (quoting *Watkins v. Maddox Medic. Assocs., Inc.*, 270 Ga. 404, 405–06, 509 S.E.2d 614 (1998)); *In re Beacham*, 2006 WL 565929, at *2 (Bankr. M.D. Ga. Feb. 17, 2006); *In re Verdi*, 244 B.R. 494, 497 (Bankr. M.D. Ga. 2000) (citing *Chilivis v. Tumlin Woods Realty Assoc. Inc.*, 250 Ga. 179, 297 S.E.2d 4, 7 (1982)); *In re Louis*, 2020 WL 2843013, at *4 (Bankr. N.D. Ga. May 29, 2020) (stating that, "under a bond for title or similar purchase contract, Georgia law allows three remedies to the seller: (1) sue on the contract for damages and subject the land to levy and sale to collect the judgment; (2) rescind the contract and bring an action for ejectment; or (3) if the property is vacant, re-enter and take possession").

Here, the undisputed facts establish that Plaintiff has resided in the Property, such

11

that there has been no abandonment or adverse possession by Stonecrest or any party claiming through Stonecrest. Further, the record contains no evidence that Stonecrest or any party claiming through Stonecrest initiated a legal proceeding, other than Defendant's attempt to evict Plaintiff, which has been appealed and stayed by the filing of Plaintiff's bankruptcy and does not appear to be a proceeding to foreclose Plaintiff's equity. *See In re Louis*, 2020 WL 2843013, at *4.

Accordingly, Plaintiff owns an interest in the Property, subject to the claim for repayment of the amount owed under the Contract, and that claim is a "claim" within the meaning of the Bankruptcy Code that can be treated under Plaintiff's Chapter 13 plan, *In re Dry Creek Farms, LLC*, 2011 WL 9210473, at *4 ("These rights of a seller under an installment land sale contract constitute a 'claim' within the definition of 11 U.S.C. § 101(5)."). Such ownership is superior to later interests unless the holders of such interests were *bona fide* purchasers of the Property for value and without notice of the basis for Plaintiff's claim of ownership. *See Bacote v. Wyckoff,* 251 Ga. 862, 865, 310 S.E.2d 520, 524 (1984) ("He who takes with notice of an equity takes subject to that equity.") (citing OCGA § 23–1–16); *Yancey v. Harris*, 234 Ga. 320, 322, 216 S.E.2d 83, 84 (1975) ("The law is clear that where a trustee attempts to transfer the trust realty to a purchaser in

12

violation of the rights of a beneficiary in possession, the purchaser takes with notice of the equitable title, and the purchaser will not succeed in an attempt to eject the beneficiary."); *Johnson v. Equitable Sec. Co.*, 114 Ga. 604, 40 S.E. 787, 789 (1902) ("If the Equitable Securities Company was a bona fide purchaser without notice of the equity which Whaley had in the land by payment of the purchase money, then that company would undoubtedly take the property freed from any such equity . . . ."); *Citizens' & S. Bank v. Realty Sav. & Tr.*, 167 Ga. 170, 144 S.E. 893, 895 (1928) ("[T]he executory contract of purchase . . . would not affect the rights of subsequent purchasers for value . . . without notice thereof, who received deeds . . . and duly recorded them prior to record of the contract . . ., but would affect such purchasers if they had notice of the executory contract.").

  Defendant submits that it was a *bona fide* purchaser for value without notice of Plaintiff's equity because Plaintiff had possession of the Property at the time Defendant and Collins took their interests in the Property. "Under Georgia law, '[t]o qualify as a bona fide purchaser for value without notice, a party must have neither actual nor constructive notice of the matter at issue.'" *In re Adams*, 583 B.R. 541, 553 (Bankr. N.D. Ga. 2018). "Possession of land shall constitute notice of the rights or title of the

13

occupant." O.C.G.A. § 44-5-169; *see also Riggins v. Deutsche Bank Nat. Tr. Co.*, 288 Ga. 850, 852, 708 S.E.2d 266, 269 (2011) (noting that possession of property provides constructive notice of any right or title that could be discovered by inquiry) (citing *Cloud v. Jacksonville Nat'l Bank*, 239 Ga. 353, 354, 236 S.E.2d 587 (1977); *Palmer v. Forrest, Mackey & Assocs.*, 251 Ga. 304, 307(2), 304 S.E.2d 704 (1983); *Yancey v. Harris*, 234 Ga. 320, 324, 216 S.E.2d 83 (1975)); *In re Sheetex, Inc.*, 1999 WL 739628, at *7 (Bankr. M.D. Ga. Sept. 21, 1999) ("Indeed, a prospective purchaser of real property who finds someone other than the prospective grantor in possession of the property has the affirmative duty to ask the possessor about the state of the occupant's right or title to the property."). To have this effect, such "'possession must have some element in it indicative that the occupancy is exclusive in its nature" and must be "open, visible, exclusive, and unambiguous, not liable to be misconstrued or misunderstood." *Riggins v. Deutsche Bank Nat. Tr. Co.*, 288 Ga. 850, 854, 708 S.E.2d 266, 269–70 (2011) (quoting *McDonald v. Taylor*, 200 Ga. 445, 451–452(1), 37 S.E.2d 336 (1946)).

Also "included in the concept of constructive notice is the duty to inquire." *In re Adams*, 583 B.R. 541, 553 (Bankr. N.D. Ga. 2018). Pursuant to O.C.G.A § 23-1-17, "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of

14

everything to which it is afterwards found that such inquiry might have lead. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties." The "standard for inquiry notice is whether circumstances exist that would excite a purchaser's attention enough to require further inquiry." *In re Mun. Corr., LLC*, 501 B.R. 119, 139 (Bankr. N.D. Ga. 2013) (citing O.C.G.A. § 23–1–17).

The undisputed facts show that Plaintiff was in possession of the Property at the time Defendant purchased the Property and at the time Defendant conveyed an interest in the Property to Collins. The undisputed facts also show that Plaintiff's possession was exclusive and unambiguously adverse to the record owner of the Property. Plaintiff's possession, therefore, triggered an affirmative duty to inquire as to why Plaintiff was in possession of the Property. *Citizens' & S. Bank v. Realty Sav. & Tr.*, 167 Ga. 170, 144 S.E. 893, 895 (1928) ("Adverse possession of land is notice of whatever facts in reference to the title would be developed by inquiry of the person in possession, the presumption being that inquiry of him will disclose how and under what right he holds possession, and therefore lead to the discovery of the real adverse holder, whether himself or another for or under whom he holds possession; and in the absence of such inquiry, the presumption is that had it been made, the right, title, or interest under which the possessor held would

have been discovered. *** The effect of possession is to put a prospective purchaser upon inquiry; and if it can be shown that he made such inquiry and followed it up in good faith, and was informed that the title was in another, from whom he purchased, the presumption arising from possession will be overcome."); *Yancey v. Harris*, 234 Ga. 320, 322, 216 S.E.2d 83, 84 (1975) ("Actual possession by the cestui que trust is constructive notice to a purchaser as to the occupant's equitable title.").

Defendant is charged with having conducted a diligent investigation of why Plaintiff was in possession of the Property or explaining why such an investigation would have been futile and would not have disclosed Plaintiff's equitable claim to the Property. Defendant points to the undisputed fact that, when eventually asked to explain why he should not be evicted from the Property, Plaintiff did not rely on his ownership of the Property through Sampson and the Contract and asserts that this is evidence that, if Defendant or Collins had inquired of Plaintiff before purchasing an interest in the Property, Plaintiff would not have disclosed the existence of the Contract. In response, Plaintiff points to his own affidavit, in which he avers that, had he been asked at that time, he would have explained that his right to the Property came through Sampson and the Contract. The Court cannot resolve this dispute of fact at the summary judgment stage.

16

The Court also notes that the record has not been developed regarding any effort or lack thereof by Defendant to inquire of Stonecrest as to Plaintiff's presence on the Property and whether making such an inquiry would also have been futile. "[B]ecause it is a jury's prerogative to accept or reject, in whole or in part, the evidence submitted, 'generally the question of what would put a prudent man on his guard is a question for the jury . . . .'" *Montgomery v. Barrow*, 286 Ga. 896, 899, 692 S.E.2d 351, 354 (2010*); see also Lee v. Park*, 341 Ga. App. 350, 354, 800 S.E.2d 29, 33 (2017). Accordingly, a grant of summary judgment in favor of either movant is not warranted.

Accordingly,

IT IS ORDERED that Plaintiff's Motion is DENIED;

IT IS FURTHER ORDERED that Defendant's Motion is DENIED.

**END OF DOCUMENT**

## Distribution List

James Lewis Lovelace, III
547 Chappell Road
Atlanta, GA 30318

Darrius M. Woods
Atlanta Volunteer Lawyers Foundation
Suite 1750
235 Peachtree Street

Atlanta, GA 30303

CSB Logistics, llc
Registered Agent, Romell Asiel Blackman
1760 Lakes Parkway, Unit 5101
Lawrenceville, GA 30043-6194

Richard J. Storrs
The Storrs Law Firm
Suite 212
2870 Peachtree Road
Atlanta, GA 30305